[967 NE2d 1160, 944 NYS2d 715]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL JACKSON, Appellant.

Argued February 16, 2012; decided March 27, 2012

## POINTS OF COUNSEL

*Legal Aid Society*, New York City (*Jonathan Garelick* and *Steven Banks* of counsel), for appellant. Where a police officer saw marihuana in appellant's hand after she pulled over his car for a traffic infraction, the information charging criminal possession of marihuana in the fifth degree failed to allege that appellant possessed the substance in a public place; the information also failed to sufficiently allege that the marihuana was in open view. (*People v Alejandro*, 70 NY2d 133; *People v Jones*, 9 NY3d 259; *People v Hall*, 48 NY2d 927; *People v Case*, 42 NY2d 98; *People v Casey*, 95 NY2d 354; *People v Dumas*, 68 NY2d 729; *People v Dreyden*, 15 NY3d 100; *People v Kalin*, 12 NY3d 225; *People v Weinberg*, 34 NY2d 429; *People v McNamara*, 78 NY2d 626.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Shulamit Rosenblum Nemec* and *Leonard Joblove* of counsel), for respondent. The accusatory instrument was facially sufficient. (*People v Keizer*, 100 NY2d 114; *People v Kalin*, 12 NY3d 225; *People v Alejandro*, 70 NY2d 133; *People v Konieczny*, 2 NY3d 569; *People v Casey*, 95 NY2d 354; *Smith v County of Nassau*, 34 NY2d 18; *People v Coffey*, 12 NY2d 443; *People v Case*, 42 NY2d 98; *People v Hansen*, 95 NY2d 227; *People v Jones*, 9 NY3d 259.)

### OPINION OF THE COURT

GRAFFEO, J.

After he was found with marihuana during a traffic stop, defendant Samuel Jackson pleaded guilty to criminal possession of marihuana in the fifth degree. On appeal, he argued that the accusatory instrument charging him with that crime was jurisdictionally deficient because it failed to adequately allege that he was in a "public place" and that the marihuana was "open to public view"—two elements of the fifth degree possession offense. Rejecting defendant's argument, the Appellate Term affirmed defendant's conviction (27 Misc 3d 5 [2010]) as do we.

While operating his vehicle on a public street in Brooklyn, defendant committed a traffic infraction that was witnessed by a police officer. When the officer pulled him over and approached his vehicle, she detected a strong odor of marihuana and saw defendant holding a ziplock bag of marihuana in his hand. Other items of contraband were subsequently discovered as a consequence of the motor vehicle stop, including more than a dozen bags of marihuana. Defendant was ultimately charged with one count of criminal possession of marihuana in the fifth degree, two counts of unlawful possession of marihuana and other offenses. He pleaded guilty to criminal possession of marihuana in the fifth degree in satisfaction of all the charges and was sentenced to five days in jail.

Despite the guilty plea, defendant appealed his conviction to the Appellate Term, arguing that the accusatory instrument charging him with the fifth-degree possession offense was jurisdictionally deficient. Defendant contended that, because he was in a private vehicle, he was not in a public place when he was found in possession of marihuana. He further asserted that the police officer's allegation that he was holding the marihuana in his hand exposed to public view was too conclusory to satisfy that element of the offense. The Appellate Term rejected these arguments and declined to disturb defendant's conviction. A Judge of this Court granted defendant leave to appeal (16 NY3d 832 [2011]).

■ By pleading guilty, defendant forfeited most appellate claims but he retained the right to challenge the jurisdictional sufficiency of the accusatory instrument because "[a] valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution" (*People v Dreyden*, 15 NY3d 100, 103 [2010], quoting *People v Case*, 42 NY2d 98, 99 [1977]). Since defendant did not waive the right to be tried for this misdemeanor offense by information, we must assess his claim based on the standards governing an information (*see People v Kalin*, 12 NY3d 225, 228 [2009]). An information is valid for jurisdictional purposes if it contains nonconclusory factual allegations that, if assumed to be true, address each element of the crime charged, thereby affording reasonable cause to believe that defendant committed that offense (*People v Konieczny*, 2 NY3d 569, 575 [2004]; *see* CPL 100.40 [1] [c]). Although an information should also be based on nonhearsay allegations, we have clarified that "a purported hearsay defect in an accusatory instrument is nonjurisdictional and, thus,

forfeited by a guilty plea" (*Konieczny* at 575, quoting *People v Keizer*, 100 NY2d 114, 121 [2003]). Here, defendant does not rely on hearsay deficiencies, but argues that the accusatory instrument failed to include sufficient nonconclusory factual allegations relating to two elements of the charged offense. Thus, if meritorious, the claim he raises would be jurisdictional in nature, as the People concede.

To resolve defendant's challenge to the accusatory instrument we must review the elements of criminal possession of marihuana in the fifth degree, which is defined in Penal Law § 221.10 (1). This offense was created in 1977 when the Legislature added article 221 to the Penal Law (L 1977, ch 360). The new article restructured marihuana possession offenses with the intent to reduce criminal culpability for the possession of a small quantity of marihuana for personal use in a private place (such as in the home), making such conduct a violation when it had previously been a misdemeanor (Mem of Assembly Comm on Codes, Bill Jacket, L 1977, ch 360). However, the Legislature did not alter its view that the possession or use of marihuana in public constituted a crime. Toward that end, Penal Law § 221.10 was enacted creating the misdemeanor offense of criminal possession of marihuana in the fifth degree. Under the subsection at issue in this case, "[a] person is guilty of criminal possession of marihuana in the fifth degree when he knowingly and unlawfully possesses . . . marihuana in a public place, as defined in section 240.00 of this chapter, and such marihuana is burning or open to public view" (Penal Law § 221.10 [1]). Defendant contends that the accusatory instrument was jurisdictionally deficient because it failed to allege that he was in a public place since he was in his vehicle when he was discovered with the marihuana and the allegations were too conclusory to support the inference that the marihuana was "open to public view." We address each argument in turn.

## Public Place

When the Legislature made possession in a "public place" an element of criminal possession of marihuana in the fifth degree, it did not assign that term a specific meaning that would be unique to that offense (*see e.g.* Penal Law § 240.37 ["Loitering for the purpose of engaging in a prostitution offense"]), nor did it leave the phrase undefined (*see e.g. People v McNamara*, 78 NY2d 626 [1991] [interpreting "public place" element in public lewdness statute where Legislature did not define that term or

cross-reference a definition existing elsewhere in the Penal Law]). Instead, it incorporated by reference a preexisting definition of the phrase from article 240, a separate Penal Law article relating to a broad range of offenses against public order. Under Penal Law § 240.00 (1), a "public place" is

"a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence."

In this case, where defendant was found in possession of marihuana during a motor vehicle stop on a public street, the People alleged that defendant was in a "public place" because he was on a "highway"—a location that the Legislature specifically designated as a public place in Penal Law § 240.00 (1).*

Defendant does not dispute that a public street is a highway within the meaning of Penal Law § 240.00 (1). Rather, he contends that he was not in a public place because he was situated inside his vehicle when the officer observed marihuana in his hand. Thus, defendant characterizes the issue as whether the interior of a car used for personal transportation is a "public place." Although defendant acknowledges that a pedestrian walking on a public street would be in a "public place," under his rationale a location would change from a public street to a private place if a person is in a private vehicle. We disagree.

With one exception, Penal Law § 240.00 (1) defines a "public place" in terms of fixed physical locations—highways, schools, parks and the like—declaring these spaces to be public no matter whether a person is standing still or moving through them and regardless of the particular means of locomotion in use, if any. Thus, though certainly relevant to the second issue we address (the "open to public view" element), for purposes of the Penal Law § 240.00 (1) definition of "public place," the fact that

---

* In concluding that defendant was not in a public place because he was in his car, the dissent relies exclusively on the first clause of Penal Law § 240.00 (1) which contains a general "catch-all" definition—"a place to which the public or a substantial group of persons has access." Thus, the dissent overlooks the fact that the Legislature had previously determined that a highway is a public place, thereby obviating the need to resort to the catch-all provision. In any event, it can hardly be argued that a public street is not accessible to a substantial number of persons.

defendant was in his personal automobile does not alter the fact that he was on a highway—and was therefore in a public place—when he was seen in possession of marihuana. Insofar as the "public place" element is concerned, his situation is no different than if he were riding a bicycle on a highway or walking on a public street.

Focusing on the exception to the statute's general rule that a "public place" is a fixed physical location, defendant notes that the provision also incorporates "transportation facilities" which are defined to include not only certain physical spaces (e.g. airports and train stations) but also vehicles used for public passenger transportation, such as "aircraft, watercraft, railroad cars, buses" and the like (see Penal Law § 240.00 [2]). By referencing certain types of public transit in the definition of "public place," defendant argues that the Legislature must have intended to exclude privately-owned automobiles used exclusively for personal transportation, intending such vehicles to be private. Again, the question is not whether a person's automobile is "public" or "private" but whether defendant was in a public place when he was in his car on the street. The People do not argue that a privately-owned vehicle used exclusively for personal transportation is a "public place" akin to a subway train or public bus. Rather, a driver of a personal automobile will be in a public place only when the vehicle is in a location that qualifies under the statute as a public place. In contrast, by defining certain vehicles used for public transportation—such as a bus—as themselves constituting "public places," the Legislature made the location of those vehicles at the time of the crime irrelevant; they are "public places" whether they are being driven on a highway or are parked in a private parking lot. The Legislature's decision to broadly incorporate public transit vehicles within the definition of "public place" regardless of their location in no way undermines our conclusion that a person is in a public place when located on a highway even if he or she is inside a personal automobile.

In fact, the contrary view of the statute propounded by defendant and the dissent would distinguish unfairly between those prosecuted for less serious violations and those subject to misdemeanor convictions. For example, under their rationale, because the "public place" element would be lacking, a person smoking marihuana while sitting in a parked personal vehicle on a public street with the windows open, readily observable to

anyone passing by, would be guilty of nothing more than a viola-tion (the same offense that would apply were the person at home)—while a person standing just outside the vehicle in the same location engaged in the same behavior would be guilty of misdemeanor possession under Penal Law § 221.10 (1). This would be true even though both hypothetical parties would have engaged in conduct that impacted the public in precisely the same manner. Although acknowledging that the marihuana possession offenses were restructured to reduce penalties for private marihuana possession or use in some circumstances, the dissent and defendant would extend the 1977 reforms well be-yond the private conduct the Legislature intended to address, encompassing behavior that can fairly be described as occurring in public.

Moreover, given that the Penal Law § 240.00 (1) definition of "public place" applies to a wide variety of crimes, many involv-ing conduct bearing little similarity to the marihuana posses-sion offense to which defendant pleaded guilty, it would be imprudent to give the phrase the restricted reading urged by defendant and the dissent. A holding that a person in a private vehicle can never be in a public place could have a far-reaching impact on the scope of other offenses—leading to results likely never intended by the Legislature. For example, under Penal Law § 240.62, entitled "[p]lacing a false bomb or hazardous substance in the first degree," it is a class D felony to position in a "public place any device or object that by its design, construction, content or characteristics appears to be . . . a bomb, destructive device, explosive or hazardous substance, but is, in fact, an inoperative facsimile or imitation of such a bomb." Were we to conclude that the interior of a private automobile is not a "public place" under the Penal Law § 240.00 (1) defini-tion, then a person that put a convincing—though fake—bomb on the passenger seat of a private vehicle and parked it on the street in front of a government building would not be guilty of this offense, despite the significant public disruption, fear and even chaos that would likely ensue when the device was observed by the police or a passing civilian. Similarly, were we to conclude that a highway is not a public place as long as an in-dividual remains inside a private vehicle, then someone who engaged in harassment by slowly traveling alongside a pedes-trian walking on a secluded public street, thereby placing that person in reasonable fear of physical injury, might avoid prose-cution for harassment in the first degree (Penal Law § 240.25).

Under the theory suggested by defendant and the dissent, by electing to follow the victim in an automobile rather than on foot, the offender would have negated the "public place" element of that offense. Considered in this broader light, we are unpersuaded that the Legislature could have intended the definition of "public place" to have the narrow meaning they ascribe to it.

For all of these reasons, we reject defendant's argument that the accusatory instrument was deficient because it failed to adequately allege that defendant—seen in possession of marihuana while in his vehicle on a public street—was in a public place within the meaning of Penal Law § 240.00 (1).

## Open to Public View

Next, defendant contends that even if he was in a public place, the accusatory instrument was nonetheless deficient because the allegations that the marihuana was "open to public view" were too conclusory to establish a prima facie case. The requirement that an accusatory instrument contain nonconclusory allegations is part of the prima facie case requirement. We have explained that "[s]o long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading" (*Kalin*, 12 NY3d at 230, quoting *Konieczny*, 2 NY3d at 575 [additional citation omitted]). That being said, we have stressed that when an allegation involves a conclusion drawn by a police officer that involves the exercise of professional skill or experience, some explanation concerning the basis for that conclusion must be evident from the accusatory instrument. Otherwise, the allegation will be deemed too conclusory to meet the reasonable cause requirement (*see Kalin* [where item that was observed by officer was described as a controlled substance without having been subjected to laboratory testing, officer was required to explain basis for that conclusion]; *see also Dreyden* [where officer identified a knife as a gravity knife without describing the knife's characteristics or otherwise explaining how he reached that conclusion, allegation was too conclusory to meet prima facie case requirement]).

In this case, defendant's claim of unduly conclusory allegations relates to the "open to public view" element, which is not defined either in Penal Law § 221.10 (1) or elsewhere. But in

keeping with the policy underlying the 1977 restructuring of marihuana possession offenses, it is evident that the Legislature included this requirement to limit the criminal culpability of a party that possesses a small quantity of marihuana in a public place but does so in a manner that conceals the drug. In many respects, this element speaks more directly to the legislative concern for personal privacy—whether an individual is in a private automobile or elsewhere—than the "public place" element. That marihuana must be "open to public view" (or burning) to support prosecution under Penal Law § 221.10 (1) ensures that a pedestrian walking on a public street carrying an inconsequential amount of marihuana secreted in a bag or pocket would not be subject to misdemeanor prosecution. When considered in the context of this case, it is this element that recognizes that, although a vehicle may be located in a public place, this does not mean that its occupants and owners have relinquished privacy interests in items concealed inside. Thus, it is the "open to public view" requirement—rather than the "public place" provision—that addresses the concern expressed by the dissent that personal automobiles are, in some respects, private in the sense that certain areas within the interior of an automobile are hidden from view (*see* dissenting op at 749).

Defendant contends that the accusatory instrument in this case was too conclusory to provide reasonable cause to believe that the marihuana was open to public view. Although not a model of specificity, we conclude that the allegations were jurisdictionally sufficient. A determination that a particular item is "open to public view" does not require the exercise of professional skill or experience on the part of a police officer warranting a specialized explanation. Thus, in most cases the basis for such an allegation can be discerned by drawing reasonable inferences from all the facts set forth in the accusatory instrument. Here, the accusatory instrument alleges that, upon approaching the vehicle, the officer "smelled a strong odor of marihuana emanating from inside the . . . vehicle" and "observed the defendant holding a quantity of marihuana in [his] hand, open to public view." Additional allegations—in which the officer explains the basis for her conclusion that the substance was marihuana (*see Kalin*, 12 NY3d 225 [2009])—indicate that the contraband was in a ziplock bag. Although the officer did not describe the precise location of defendant's hand, since she was standing outside the vehicle when she saw the

substance in the ziplock bag, these allegations support the inference that any other member of the public could also have seen the marihuana from the same vantage point—meaning that the marihuana was in an unconcealed area of the vehicle that would have been visible to a passerby or other motorist. Indeed, the statute does not require that a member of the public (other than a law enforcement officer) have actually seen the contraband—it requires only that the substance have been "open" or unconcealed in a manner rendering it susceptible to such viewing. The allegations were therefore sufficient to supply a jurisdictionally adequate accusatory instrument.

Accordingly, the order of the Appellate Term should be affirmed.

Chief Judge LIPPMAN (dissenting). Thirty-five years ago, recognizing the dangers to society and individuals inherent in overcriminalization, the Legislature amended the Penal Law to lessen the burden on an already overtaxed justice system by decriminalizing private possession of small amounts of marihuana. The majority's conclusion that a private car on a highway is a "public place" under Penal Law § 240.00 (1) and § 221.10 (1) is not only contrary to the plain meaning of the statutory language, but also fails to accord sufficient weight to the broader legislative intent. The purpose of the subject Penal Law amendments was to decrease the penalty for nonviolent private conduct that does not pose a threat to public safety, while making clear that such behavior was still illegal and not to be condoned or encouraged.[1] For these reasons, I respectfully dissent.

A public place is defined in the statute as "a place to which the public or a substantial group of persons has access" (Penal Law § 240.00 [1]). The idea that the public or a substantial group of persons has access to the interior of a private car, whether traveling or parked, such that drivers and all passengers in private cars on public roads are in a "public place," contravenes the plain meaning of the statute's words. The majority claims that defendant's "situation is no different than if

---

1. It is noteworthy that possession of alcohol in an open container in a motor vehicle on the highway is unlawful, but it is a traffic infraction, not a crime. Vehicle and Traffic Law § 1227 (1), provides, in relevant part, that "[t]he drinking of alcoholic beverages, or the possession of an open container containing an alcoholic beverage, in a motor vehicle located upon the public highways or right-of-way public highway is prohibited. Any operator or passenger violating this section shall be guilty of a traffic infraction."

he were riding a bicycle on a highway" (majority op at 744), but a car, unlike a bicycle which is clearly open and exposed to public access, is an enclosed private space. Based on the definition in the statute, the interior of a private car is a private place whether it is on a highway or in a privately owned driveway. The majority glosses over this key distinction by incorrectly characterizing the question in this case as "not whether a person's automobile is 'public' or 'private' but whether defendant was in a public place when he was in his car on the street" (majority op at 744).

Criminal statutes must be interpreted in terms of their plain meaning (*see* Penal Law § 5.00 [providing that "the provisions (of this chapter) must be construed according to the fair import of their terms to promote justice and effect the objects of the law"]; *see also People v Miller*, 70 NY2d 903, 906 [1987] [recognizing that "(a)lthough criminal statutes are no longer to be strictly construed, they are to be construed 'according to the fair import of their terms' " and that "(o)nly conduct that 'falls within the plain, natural meaning of the language of a Penal Law provision may be punished as criminal' "] [citations omitted]). The majority broadens the scope of the statute beyond what the words of that provision reasonably convey. It is important to keep in mind that the underlying offense in this case is a low-level possessory violation, which under certain specific circumstances (namely when occurring in public)—and *only* under those circumstances—is transformed into a crime. The majority, in elevating a violation to a misdemeanor crime, without justification, has failed to adhere to the plain meaning of the statute.

We have recognized, in the context of determining whether a statute was unconstitutionally indefinite, that

> "[s]tatutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements" (*People v Grogan*, 260 NY 138, 145 [1932]).

Although this case presents a quite different question, as the statutory language here is clear and unambiguous and has not been challenged as void, our reasoning in *Grogan* demonstrates that one of the functions of a criminal statute is to notify the public what behavior constitutes criminal conduct.

The majority's decision runs afoul of these fundamental principles and conflicts with the reasonable interpretation of the statute as written. Certainly, the Legislature *could have* included all motor vehicles within the definition of a "public place." Had the Legislature intended such meaning, it would have used language to that effect, and indeed it has done just that in another context (*see* Penal Law § 240.37 [1] [prohibiting "(l)oitering for the purpose of engaging in a prostitution offense," and defining a "public place" as "any street, sidewalk, bridge, alley or alleyway, plaza, park, driveway, parking lot or transportation facility or the doorways and entrance ways to any building which fronts on any of the aforesaid places, *or a motor vehicle in or on any such place*"] [emphasis added]). If the Legislature desired to include private cars in the definition of "public place" prescribed by Penal Law § 240.00 (1), it seems rather odd that it did not include them in much the same way it did in Penal Law § 240.37 (1). The Legislature's choice lends itself to only one logical conclusion—that it deliberately excluded private cars from the meaning of "public place" in this particular statute while reserving and exercising the right to classify such vehicles as public places in other contexts. This choice is entirely rational and it is not for this Court to determine whether it represents an unwise policy decision. Moreover, this choice is consistent with the objectives underlying decriminalization of private possession of small amounts of marihuana.

Not every unlawful act is also criminal, and in decriminalizing certain conduct, the Legislature recognized a need to provide for "more lenient treatment of marihuana offenses, as opposed to those involving other drugs" (*People v Finley*, 10 NY3d 647, 658 [2008]; *compare* Penal Law § 221.05 [entitled "*(u)nlawful* possession of marihuana"] [emphasis added], *with* Penal Law § 221.10 [entitled "*(c)riminal* possession of marihuana in the fifth degree"] [emphasis added]). This distinction is more than a mere difference in wording and it is a significant one. It reflects the view that when people are needlessly "arrested and prosecuted for simply possessing marihuana," lives are ruined, and police and judicial resources are wasted (Mem of Assembly Comm on Codes, Bill Jacket, L 1977, ch 360).[2] The Legislature determined that decriminalization was necessary in

---

2. In a case in which a person's possession of a small amount of marihuana in a private car is harmful to the public, such as where a driver's abilities are impaired by the use of the substance, that person may be prosecuted under

order to conserve public resources and avoid the "staggering" costs to society caused by prosecution of possession of small amounts of marihuana, and that it was important that people who possess inconsequential amounts of the substance for personal, private use would no longer have to live in fear of criminal penalties (*see id.*). These changes made it extremely important for courts to properly distinguish between criminal possession and noncriminal (but unlawful) possession in order to avoid the adverse consequences of overcharging, including the stigmatization arising from a misdemeanor conviction resulting in a permanent criminal record.

In making the distinction between conduct that amounts to a violation and criminal behavior, the Legislature identified two key factors. In order for possession to qualify as a violation, warranting only a fine of up to $100, the amount possessed must be small (under 25 grams)[3] and the possession must occur somewhere that is not designated as a "public place" within the meaning of Penal Law § 240.00. Here, these requirements were met.

Contrary to the majority's contention, it is expanding the scope of Penal Law § 240.00 (1) to include private vehicles that may lead to absurd results. For example, a person in possession of a small quantity of marihuana while parked on a public street adjacent to his home would be guilty of a crime whereas if he moved the car by a matter of feet to his driveway, he would be responsible only for a violation; a recreational vehicle parked at an otherwise empty rest stop or a privately owned car on an isolated road would be deemed "public places" for purposes of Penal Law § 221.10 (1).

Because the possession did not occur in a "public place," there is no need to reach the "public view" element of the crime. However, I find the majority's analysis to be flawed with regard to that element as well. The majority correctly notes that the accusatory instrument was "not a model of specificity" (majority op at 747), but then goes on to conclude that it was nevertheless jurisdictionally sufficient. The police officer's statement in

---

other statutes, but he or she would not be guilty of criminal possession of marihuana in the fifth degree.

**3.** The Marihuana Reform Act of 1977 (L 1977, ch 360) decriminalized possession of under 25 grams of marihuana (*see also People v Finley*, 10 NY3d at 658; Penal Law § 221.05 [providing that "(a) person is guilty of unlawful possession of marihuana when he knowingly and unlawfully possesses marihuana. Unlawful possession of marihuana is a violation punishable only by a fine of not more than one hundred dollars"]).

the accusatory instrument with respect to this element is brief and conclusory. The accusatory instrument states that the police officer "conducted a car stop" after observing defendant make a turn without signaling and then that she "observed the defendant holding a quantity of marihuana in [his] hand, open to public view." While it utilizes the phrase "open to public view" from the statute, it does so in a manner that makes it impossible to determine whether the marijuana was in a place that could have been seen by members of the public. Although a vast amount of detail need not be provided in order for an accusatory instrument to be considered jurisdictionally valid, the statement here provides no information about the officer's vantage point or how she determined that the marihuana was open to public view. Rather, it simply concludes that it was.

The majority misapplies the applicable statutory provision in concluding that the possession of marihuana in this case occurred in a "public place." The Court's ruling criminalizes the private conduct in this case, contrary to the clear legislative intent of Penal Law article 221. The majority's argument that the accusatory instrument provided reasonable cause to conclude that the marihuana was open to "public view," thereby rendering the instrument jurisdictionally adequate, is unpersuasive. Accordingly, I respectfully dissent and would reverse the order of the Appellate Term.

Judges CIPARICK, READ, SMITH and PIGOTT concur with Judge GRAFFEO; Chief Judge LIPPMAN dissents and votes to reverse in a separate opinion in which Judge JONES concurs.

Order affirmed.